## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No. 11-2211-CBS

UNITED STATES OF AMERICA,

      Plaintiff,

v.

**1. TEMPEL GRAIN ELEVATORS, LLP**.

      Defendant.

---

## RULE 11(c)(1)(C) PLEA AGREEMENT AND STATEMENT
## OF FACTS RELEVANT TO SENTENCING

---

The United States of America, by and through John F. Walsh, United States Attorney for the District of Colorado, Jaime A. Pena, Assistant United States Attorney, and the defendant, Tempel Grain Elevators, LLP., by its duly authorized representative Kelly Spitzer and by counsel, John Richilano, submit the following Plea Agreement and Statement of Facts Relevant to Sentencing pursuant to D.C.COLO.LCrR 11.1 and Fed. R. Crim. P. 11(c)(1)(C).

### I. PLEA AGREEMENT

Defendant Tempel Grain Elevators, LLP., (sometimes referred to herein as Tempel Grain) agrees to plead guilty to Count One of the Information charging violations of Title 29 U.S.C. § 666 (Violation of OSHA Regulations Resulting in Death) and Title 18 U.S.C. § 2 (Aiding and Abetting).

The Defendant Tempel Grain and its representatives agree to execute the necessary documents and pleadings necessary to effect this plea agreement, including but not limited to the execution of minutes authorizing this plea agreement, the arraignment of the defendant business entity, and the authorization for a representative to represent Tempel Grain at sentencing.

Tempel Grain agrees to cooperate with the Government in its investigation and prosecution of any other individuals and entities.

The Defendant understands that any recommendation by the Government to the Court is merely a recommendation and the Court will exercise its discretion, within the law, in determining a just sentence. However, because this plea agreement is brought under Fed. R. Crim. P. 11(c)(1)(C), and is part of a global resolution of civil, criminal and administrative claims between these parties, the victim, and OSHA, should the Court choose not to agree to the sentencing resolution set forth in this plea agreement, Tempel Grain will have the option to withdraw its guilty plea.

If the Court accepts this plea agreement and imposes sentence in accordance with this agreement, the government agrees that it will file no other federal criminal charges based on matters currently known to the government and described in the statement of facts below.

Further, as part of this resolution, the parties agree that a fine of probation for a term of 5 years, with the following special terms as conditions of probation:

(1)     Tempel Grain Elevators, LLP, will, immediately upon sentencing, tender the sum of $430,000.00 in good funds to MetLife Tower Resources Group, Inc., for the purpose of purchasing a structured annuity to benefit the health, welfare and education of the persons/victims/heirs, recognizing these funds are designated as personal injury damages for tax purposes, in the initial amounts stated below:

| Heir/Beneficiary | Relationship | Amount |
| --- | --- | --- |
| Virontka Rigsby | Mother | $330,000.00 |
| JM | Brother | $25,000.00 |
| MM | Sister | $25,000.00 |

2

| CM | Sister | $25,000.00 |
| CR | Brother | $25,000.00 |

Additionally, Tempel Grain will, upon sentencing, agree to authorize the release of the sum of $70,000.00 in certified funds to Virontka Rigsby, recognizing these funds are also designated as personal injury for tax purposes. **THE TOTAL FUNDS TENDERED IS $500,000.00**. Upon payment of these funds as described, Tempel Grain will receive an acceptable release of civil liability from Virontka Rigsby.

(2)     The defendant shall not wilfully violate the law, including applicable OSHA regulations.

(3)     The defendant shall not employ persons under the age of 18 to work at its grain elevator sites.

(4)     The defendant shall provide new employees safety training as required by OSHA regulations.

(5)     The defendant shall provide refresher safety training to its employees biannually in addition to its obligations under the applicable OSHA regulations.

(6)     The defendant shall develop a procedure that includes harnesses and lanyards or similar safety equipment in anticipation of bin entry at any grain elevators which it owns or where its employees are working.

(7)     The defendant agrees to pay $50,000.00 in fines and penalties to "OSHA", as a settlement of administrative fines and penalties assessed against the defendant in OSHRC Docket Nos. 10-1031 and 10-1032. This administrative fine shall be paid in equal $10,000.00 annual

3

increments as a special condition of probation. And, the defendant will comply with all other provisions of a separate administrative agreement in OSHRC Docket Nos. 10-1031 and 10-1032.

While the Government reserves the taking of a position on whether and under what circumstances any additional fines or penalties may be imposed, Tempel Grain reserves the right to withdraw its plea if the Court is disposed to impose additional monetary penalties than those set forth above at the time of sentencing. This would not apply to the Court's authority to impose additional monetary penalties in the event Tempel Grain is alleged to violate any term of probation while it is under supervision.

## II. STATUTORY PENALTIES

The maximum statutory penalty for a violation of Title 29 U.S.C. § 666 (Count 1 of the Information) is a term of imprisonment of not more than 6 months, and not more than $500,000 fine, or both, and one (1) year supervised release, and $10 special assessment fee. Because the defendant is a business organization/entity, the maximum penalty for a violation is a fine of up to $500,000.00 pursuant to 18 U.S.C. §§ 3571(c)(4) and 3571(e).

## III. ELEMENTS OF THE OFFENSE

The elements of the offense, a violation of Title 29 United States Code, Section 666(e), are as follows:

(1)     *First*: The defendant was an employer[1] at the work site;

---

[1] The statute applies to "any employer" at a work site, not merely the direct employer of a particular worker. 29 U.S.C. 666(e); *United States v. Pitt-Des Moines*, 168 F.3d 976 (7th Cir.); See also, *United States v. Cusack*, 806 F.Supp. 47, 49 (D.NJ. 1992) (pursuant to § 652(5) an employer is "...a person engaged in a business affecting commerce who has employees..." and § 652(4) defines a person as "one or more individuals, partnerships, associations, corporations, business trusts, legal representatives, or any organized group of persons.").

4

(2)     *Second*: The defendant willfully[2] violated an applicable OSHA regulation(s);[3]

(3)     *Third*: The violation caused the death of any employee.[4]

## IV.  STIPULATION OF FACTUAL BASIS AND FACTS RELEVANT TO SENTENCING

The parties agree that there is no dispute as to the material elements that establish a factual basis for the offense for conviction.  Pertinent facts are set out below in order to provide a factual basis for the plea and to provide facts that the parties believe are relevant, pursuant to U.S.S.G. § 1B1.3, for computing the appropriate guideline range.  To the extent the parties disagree about the facts relevant to sentencing, the statement of facts identifies those facts known to be in dispute at the time of the plea. U.S.S.G. § 6B1.4(b).

The statement of facts herein does not preclude either party from presenting or arguing, for sentencing purposes, additional facts or factors not included herein that are relevant to the guideline computation, U.S.S.G. § 1B1.3, or to sentencing in general.  U.S.S.G. § 1B1.4. "[I]n determining the factual basis for the sentence, the Court will consider the stipulation [of the parties], together with the results of the presentence investigation, and any other relevant information." U.S.S.G. § 6B1.4, comment.

---

[2] The term "willful" means "...done knowingly and purposely by an employer who, having a free will or choice, either intentionally disregards the standard or is plainly indifferent to its requirement."*United States v. Pitt-Des Moines*, 168 F.3d 976 (7th Cir.) <u>citing</u> *United States v. Dye*, 510 F.2d 78, 81 (10th Cir. 1975).

[3] As cited in the Indictment.

[4] 29 U.S.C. 666(e); *United States v. Pitt-Des Moines*, 168 F.3d 976 (7th Cir.); See also, *United States v. Cusack*, 806 F.Supp. 47, 49 (D.NJ. 1992) (pursuant to § 652(6) an employee is "an employee of an employer who is employed in a business of his employer which affects commerce.").

The parties agree that the date on which conduct relevant to the offense (U.S.S.G. § 1B1.3) began is on or about May 29, 2009. The parties agree that the Government's evidence would be as follows:

Tempel Grain Elevators, LLP entered into an agreement with Eads Consumers Supply Company, Inc. on August 9, 2004 to lease and operate the Haswell Grain Elevator, located in Haswell, Colorado. The lease expired on May 31, 2009 at 12:00 PM. During that time frame, Tempel Grain Elevators, LLP was the sole operator of the Haswell Grain Elevator and provided the labor to operate the facility. Tempel Grain Elevators, LLP had the responsibility to train, oversee and control all the employees assigned to work at the Haswell Grain Elevator in accordance to 29 CFR 1910.272. It was common practice for Tempel Grain Elevators, LLP to hire high school-aged teenagers from the local area to work at their various grain elevators.

During the first or second week of May, 2009, Jack Martin, Central Area Manager, and Tony Leighty, Corporate Operations Manager for Tempel Grain Elevators, LLP, examined the site and discussed the impending end of the lease which was to occur on May 31, 2009. It required the removal of all grain and a general clean-up of the Haswell Grain Elevator by Tempel Grain Elevators, LLP by June 1, 2009.

Jack Martin hired several high school aged teenagers to work at various Tempel Grain Elevators, LLP sites. On May 26, 2009, Jack Martin assigned three teenagers including Cody Rigsby to work with foreman, Levi Bachmann, at the Haswell Grain Elevator. On May 28, 2009, Jack Martin hired another high school-aged teenager to work at the Haswell Grain elevator with Levi Bachmann.

Tempel Grain Elevators, LLP assigned the teenagers various hazardous tasks, which included

6

bin entry, "Walking the Grain", working in and around unguarded mechanical equipment, unsafe electrical devices, confined spaces, and exposure to explosive grain dust. Employees regularly entered the bins to "walk down grain", the practice of walking around the edge of a bin to dislodge clumps of grain while grain was flowing from the bin, without the appropriate safety harness with lanyard. The defendant knew about such practices and nonetheless failed to comply with the grain handling facilities regulation at 29 C.F.R. §1910.272. Tempel Grain Elevators, LLP knowingly and willfully failed to provide safety and health training to these teenagers despite three of the four teenagers having three months or less work experience in the grain industry.

On May 29, 2009, Levi Bachmann, per instructions from Tony Leighty and Jack Martin, split the crew into pairs and assigned them to clean out the bins. Due to the lack of safety and rescue equipment on site, the teenagers entered the bins without the benefit of personal protective equipment such as a body harness and lanyard. The only instructions provided to the crew were to watch out for one another and be careful.

At about 12:45 PM on May 29, 2009, Levi Bachmann told Cody Rigsby and another boy to enter Bin 21 to clean it out. Levi Bachmann allowed Cody Rigsby to enter Bin 21 despite knowing that the bucket elevator was not locked out and grain was flowing from the bin. While inside the bin, Cody Rigsby was engulfed by the flowing grain and sucked under where he died of asphyxiation.

Despite the efforts of Cody Rigsby's co-workers, they were unable to locate and rescue him. This fatality was preventable and occurred due to the lack of safety and health training, personnel protective and rescue equipment, unsafe work procedures and a lack of on-site emergency responders.

The defendant, as a business entity and aiding and abetting others willfully violated the

7

following provisions which are standards, rules, and regulations promulgated and prescribed

pursuant to Title 29, United States Code, Chapter 15, as follows:

| Provisions of 29 CFR 1910 Violated and a General Description of the Provisions | Manner and Means By Which These Defendants Violated the Provisions |
|---|---|
| §272(d): The employer shall develop and implement an emergency action plan meeting the requirements contained in 29 C.F.R. 1910.38 | Tempel Grain Elevators, LLP did not develop or implement an emergency action plan as required. |
| §272(e)(1): The employer shall provide training to employees at least annually and when changes in job assignment will expose them to new hazards. | Tempel Grain Elevators, LLP did not provide any training to employees who worked at the Haswell Grain Elevator on the safety and health hazards associated with the grain industry. |
| §272(e)(2): Employees assigned special tasks, such as bin entry and handling of flammable or toxic substances, shall be provided training to perform these tasks safely. | Tempel Grain Elevators, LLP did not provide training to employees who entered the grain storage structures training about engulfment and mechanical hazards and how to avoid them. |
| §272(g)(1)(ii): All mechanical, electrical, hydraulic, and pneumatic equipment which presents a danger to employees inside grain storage structures shall be de-energized and shall be disconnected, locked-out and tagged, blocked-off, or otherwise prevented from operating by other equally effective means or methods. | Tempel Grain Elevators, LLP did not de-energize and disconnect, locked-out and tag, or otherwise prevent the operation of the bucket elevator while employees were inside grain storage structures.<br><br>Tempel Grain Elevators, LLP did not close and lock out the chute to bin 21 to stop the flow of grain while employees were inside the bin. |
| §272(g)(1)(iv):"Walking down grain" and similar practices where an employee walks on grain to make it flow within or out from a grain storage structure, or where an employee is on moving grain, are prohibited. | Representatives of Tempel Grain Elevators, LLP directed employees to enter the bins to make the grain flow while the grain was being removed from the bins. |

| | |
|---|---|
| §272(g)(2): Whenever an employee enters a grain storage structure from a level at or above the level of the stored grain or grain products, or whenever an employee walks or stands on or in stored grain of a depth which poses an engulfment hazard, the employer shall equip the employee with a body harness with lifeline, or a boatswain's chair that meets the requirements of subpart D of this part. | Tempel Grain Elevators, LLP did not provide employees with a body harnesses with lifeline or a boatswain's chair prior to sending the employees into bins that exposed the employees to an engulfment hazard. |
| §272(g)(3): An observer, equipped to provide assistance, shall be stationed outside the bin, silo, or tank being entered by an employee. §272(g)(5):The employee acting as observer shall be trained in rescue procedures, including notification methods for obtaining additional assistance. | Tempel Grain Elevators, LLP did not station a trained observer, equipped to provide assistance while employees were inside cleaning bins. |
| §272(g)(6): Employees shall not enter bins, silos, or tanks underneath a bridging condition, or where a buildup of grain products on the sides could fall and bury them. | Representatives of Tempel Grain Elevators, LLP ordered employees to enter bins where there were large buildups of grain (castling) on the sides and sloped portions of the bins. |

## IV. SENTENCING COMPUTATION

The parties understand that the United States Sentencing Guidelines are inapplicable to the sentencing before the Court because the offense of conviction is a Class B misdemeanors, and that a sentence should be imposed pursuant to the sentencing factors in 18 U.S.C. 3553. However, the parties provide these Guideline computations to assist the Court and **BY WAY OF ILLUSTRATION** the sentence that might be derived if the Sentencing Guidelines were indeed applicable.

The parties understand that the Court may impose any sentence up to the statutory maximum sentence, regardless of any Guideline range computed, and that the Court is not bound by any

position of the parties. U.S.S.G. § 6B1.4(d). The parties understand that the Sentencing Guidelines are advisory. The Court is free, pursuant to U.S.S.G. §§ 6A1.3 and 6B1.4, to reach its own findings of facts and sentencing factors considering the parties' stipulations, the presentence investigation, and any other relevant information. U.S.S.G. § 6B1.4 comment.; U.S.S.G. § 1B1.4.

A.      The base guideline provision applicable to these types of offenses is U.S.S.G. § 2X5.2 which applies to a Class A Misdemeanor not covered by another specific offense guideline. U.S.S.G. § 2X5.2 provides for a base offense level of 6.[5] Therefore the base offense level is 6.

B.      There is no aggravating role adjustment pursuant to U.S.S.G. §3B1.1. The resulting offense level remains 6.

C.      Pursuant to U.S.S.G. § 3E1.1(a), defendant has demonstrated acceptance of responsibility as to the offense of conviction. A two-level downward adjustment results in an offense level of 4.

D.      The parties understand that the defendant's criminal history computation is tentative. The criminal history category (CHC) is determined by the Court. At this stage, it appears that the

---

[5] Chapter 8 of the United States Sentencing Guidelines, particularly  § 8C2.8, specifies the factors the Court may take into account in determining and appropriate fine, including the following: (1) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes of the organization; (2) the organization's role in the offense; (3) any collateral consequences of conviction, including civil obligations arising from the organization's conduct; (4) any pecuniary loss caused or threatened by the offense; (5) whether the offense involved a vulnerable victim; (6) any prior criminal record of an individual within high-level personnel of the organization who participated in, condoned, or was willfully ignorant of the criminal conduct; (7) any prior civil or criminal misconduct by the organization other than that counted under § 8C2.5©; (8) any culpability score...higher than 10 or lower than 0; (9) partial but incomplete satisfaction of the conditions for one or more of the mitigating or aggravating factors set forth in § 8C2.5; (10) any facor listed in 18 USC 3572(a); and (11) whether the organization failed to have, at the time of the instant offense, an effective compliance and ethics program within the meaning of § 8b2.1.

defendant has no criminal history, resulting in a CHC of I.

E.      The Guideline range resulting from the estimated offense level of 4, and the tentative CHC of I, is 0 to 6 months. However, imprisonment is not available for this organizational defendant.

F.      Pursuant to U.S.S.G. § 5E1.2 and 18 U.S.C § 3571, assuming an offense level of 4, the fine range for this offense is $250.00 to $500,000.00 plus applicable interest and penalties.

G.      Pursuant to 18 U.S.C. § 3583(b)(3), the Court may impose a term of supervised release of up to one year if a term of imprisonment is imposed.

H.      Pursuant to 18 U.S.C. § 3561 , the Court may sentence this defendant to a term of up to 5 years probation, and may impose conditions it deems appropriate after applying the factors in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3561.

## V.  WHY THE PROPOSED PLEA DISPOSITION IS APPROPRIATE

The parties believe the sentencing range resulting from the proposed plea agreement is appropriate because all relevant conduct directly attributable to this defendant is disclosed, the sentencing guidelines and 18 U.S.C. § 3553 permit the court to take into account all pertinent sentencing factors with respect to this defendant, and the charges to which the defendant has agreed to plead guilty adequately reflect the seriousness of the actual offense behavior. More specifically, the parties believe no other method of criminal, civil or administrative enforcement would result in substantial payments made directly to the victim's survivors by the perpetrator of the offense except as provided in this plea agreement, voluntarily agreed to by the defendant.

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings or assurances, express or implied. In

entering this agreement, neither the government nor the defendant has relied, or is relying, on any

terms, promises, conditions or assurances not expressly stated in this agreement.

Date: 8/5/11

Kelly Spitzer, Authorized Representative of
Tempel Grain Elevators, LLP.

Date: 8/5/11

John Richilano, Attorney for Defendant

Date: 8/5/11

Jaime A. Pena, Assistant U.S. Attorney